UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| UNITED STATES OF AMERICA, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:16 CR 133 SNLJ (ACL) |
| | ) |
| MICHAEL A. McNAIR, JR., | ) |
| | ) |
| Defendant. | ) |

# **REPORT AND RECOMMENDATION**

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). Pending before the undersigned are the Defendant's Motions to Disclose and Produce the Confidential Informant, to Conduct a *Franks* Hearing and to Suppress Evidence Seized pursuant to the Search Warrant. (Doc. 28.)

First, McNair argues that the Search Warrant in his case was not supported by probable cause because the information relied upon in the Affidavit was stale. Next, he argues that the Affidavit in support of the Search Warrant contained false statements and without the false statements probable cause is lacking. On this point, McNair argues he's entitled to a *Franks* hearing based on allegations that the affiant for the warrant: a) falsely stated that McNair lived at the apartment that was the subject of the search and b) omitted information related to the informant's criminal history. Finally, McNair argues that the officers exceeded the scope of the Search Warrant when they conducted a search of his person.

The Government filed a response in opposition to McNair's claims. (Doc. 30.)

At the conclusion of the evidentiary hearing, both parties relied on the arguments in their written briefs. McNair submitted two additional exhibits following the hearing.

In consideration of the pleadings identified above, as well as all exhibits admitted into evidence, the undersigned recommends that the following findings of fact and conclusions of law be adopted and that McNair's pretrial motions be denied.

**I. Findings of Fact**

On February 25, 2016, Southeast Missouri Drug Task Force Officer Jason Morgan applied for a search warrant to search an apartment on Cynthia Street in Poplar Bluff where he believed the Defendant, Michael McNair, Jr., was living with his girlfriend. Morgan is also a detective for the Poplar Bluff Police Department. Along with his Application for a Search Warrant, Detective Morgan attached an Affidavit (Gov't. Ex. #1, hereinafter referred to as Doc. 28-1, Affidavit) and presented it to a Butler County Circuit Court Judge. The Affidavit explained that Detective Morgan had been part of an investigation which led him to believe that McNair possessed controlled substances and drug paraphernalia; records and money related to drug sales; firearms and ammunition; as well as documents reflecting McNair lived at the apartment. Detective Morgan believed the information he summarized in the Affidavit constituted probable cause to support the issuance of a search warrant for items related to both drug trafficking and unlawful possession of firearms and ammunition.

Detective Morgan's Affidavit included information about McNair's criminal history, information received from a confidential source, and communications with other

law enforcement officers.  Detective Morgan noted that McNair had a felony drug trafficking conviction from 2007 and was also known as "Bam."

Detective Morgan's Affidavit set out information that had been provided by a confidential informant (CI).  The CI reported that McNair lived in an apartment on Cynthia Street with his girlfriend, Kristen Chilton.  The CI also provided a cellular phone number that was used by the girlfriend.

Detective Morgan confirmed that the lease and utilities for the apartment were listed in the girlfriend's name and that the girlfriend recently reported both the Cynthia Street apartment as her residence and the cellular phone number reported by the CI.  Additionally, Detective Morgan learned that another officer received intelligence information from a different confidential source that McNair was involved in drug trafficking.

Within the Affidavit, Officer Morgan summarized the information that had been reported by the CI, including:

1) "he/she has, *between the months of January and February 2016*, brought individuals to th[e Cynthia Street] apartment specifically to purchase narcotics from McNair."  *See* Doc. 28-1, Affidavit at ¶ 2.

2) "McNair sells methamphetamine and heroin to customers who buy from McNair at [the Cynthia Street] apartment."  *Id*.

3) ". . . he/she had observed a large rifle inside [the] apartment. . .on the night of *February 4, 2016*, McNair answered the door of [the] apartment holding [a large] rifle. . . .after [the CI] was allowed in, McNair placed the rifle on the kitchen table.  The CI. . .observed an additional handgun on an end table in the living room during the same visit. . .[and] believe[d] those firearms were real firearms.  *Id*. at ¶ 4.

4) On *February 12, 2016*, the CI. . .observed the same rifle inside [the] apartment located on the kitchen table. . .[and] McNair sells methamphetamine and heroin from [the] apartment where the firearms were observed. *Id*. at ¶ 5.

5) . . .on *February 17, 2016*,. . .[Officer Morgan spoke to the CI and t]he CI stated that she had spoken to McNair and that McNair said he had just returned from a trip to St. Louis, Missouri where McNair replenished his supply of heroin for sale. *Id*.

As to the informant's reliability, Officer Morgan stated:

> The CI has provided, to date, accurate and reliable information on other narcotics distributors and users, locations and vehicles utilized by these individuals and also firsthand information about receiving narcotics from mid to upper level dealers located in the Eastern District of Missouri. In return for information provided by the CI to law enforcement, the CI has received subsistence in the form of cash and pre-paid phone cards.

*Id*. at ¶ 8.

When the Search Warrant was executed on February 25, 2016, officers observed lettering on the apartment's entry door, which included the names "Kristen" and "Bambam." *See* Gov't. Ex. #2. McNair, who investigators learned was also known as "Bam," was found in the combination living room and kitchen area of the apartment. McNair's girlfriend and father were found in the adjoining bedroom and bathroom areas. The apartment consisted of those two areas.

Once inside the apartment the officers conducted a search. On a dresser, officers observed white powder that was believed to be methamphetamine or heroin on a scale. There was also a credit card on the washing machine that had powder on it. Detective Morgan testified that in his experience credit cards, hotel key cards, and other similar

items are commonly used to mix controlled substances with cut. Two additional sets of digital scales were found. On the bed in the bedroom was a blue soccer bag that contained a .38 caliber pistol, as well as a document from a bondsman with McNair's name on it dated October 1, 2015 for a 2013 possession of a firearm case. The address listed on the receipt was 6618 Barr, Saint Louis, Missouri.

Based on his investigation and what was observed in the apartment, Detective Morgan believed he had probable cause to arrest McNair. A pat down search of McNair's outer clothing was completed and Detective Morgan found approximately two ounces of methamphetamine in McNair's groin area and nearly $2,000 cash in his pants pocket.

During the suppression hearing, Officer Morgan testified that he believed McNair lived at the Cynthia Street apartment with his girlfriend, Kristen Chilton. Although it is not mentioned in his Affidavit, in December of 2015, Detective Morgan was one of the surveillance officers during a controlled purchase of drugs from McNair via an unwitting informant at the Cynthia Street apartment. When asked about the CI's criminal history, Officer Morgan testified that the informant had a prior drug conviction. During the Fall of 2016, Officer Morgan communicated with McNair's probation officer who advised that McNair reported he was living with his mother at 6618 Barr in St. Louis from May 2015 through September 2016. The probation officer indicated, however, that McNair stopped reporting around March 2016 because he had moved back to Poplar Bluff. *See* Def.'s Ex. E, filed as Doc. 34-1. A check of Poplar Bluff Police Department records

confirmed that McNair regularly used his mother's address (6618 Barr) during interactions with law enforcement.

Officer Morgan was the only witness who offered testimony at the hearing.

## II. Conclusions of Law

McNair's first argument is that Detective Morgan's Affidavit contained stale information, thereby negating the judge's finding of probable cause. Specifically, "McNair asserts that the 21 day delay between the date when allegedly the CI. . .saw him with the rifle. . .and the execution of the search warrant renders the search warrant stale." (Doc. 28 at 6.) Next, McNair claims that he is entitled to a *Franks* hearing based on allegations that Detective Morgan's reference to the Cynthia Street apartment as McNair's residence was false and that Detective Morgan omitted important criminal history information regarding the CI. Finally, McNair argues that the Search Warrant did not authorize the officers to search his person in conjunction with the execution of the search. The undersigned will address each argument in turn.

### II.A. Information contained in the Affidavit was not stale.

"Probable cause means a fair probability that contraband or evidence of a crime will be found in a particular place, given the circumstances set forth in the affidavit." *United States v. Lemon*, 590 F.3d 612, 614 (8th Cir. 2010) (quotations omitted). "A warrant becomes stale if the information supporting the warrant is not sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search." *United States v. Brewer*, 588 F.3d 1165, 1173 (8th Cir. 2009).

"The timeliness of the information supplied in an affidavit depends on the circumstances of the case, including the nature of the crime under investigation." *United States v. Smith*, 266 F.3d 902, 904-05 (8th Cir. 2001) (citing *United States v. Koelling*, 992 F.2d 817, 822 (8th Cir. 1993)) (alteration added). "[T]here is no bright-line test for determining when information is stale . . . and the vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." *United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001) (quoting *Koelling*, 992 F.2d at 822) (first alteration added). Instead, when a staleness claim is made the Eighth Circuit examines "the lapse of time since the warrant was issued, the nature of the criminal activity, and the kind of property subject to the search." *United States v. Huyck*, 849 F.3d 432, 439 (8th Cir. 2017), (quoting *United States v. Etsey*, 595 F.3d 836, 840 (8th Cir. 2010)). "Where continuing criminal activity is suspected, the passage of time is less significant." *United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 2001).

As to the firearms that were the subject of the search, "[i]nformation that someone is suspected of possessing firearms illegally is not stale, even several months later, because individuals who possess firearms tend to keep them for long periods of time." *United States v. Neal*, 528 F.3d 1069, 1074 (8th Cir. 2008) (citation omitted). In *Neal*, the Eighth Circuit concluded that a CI's reported observation of firearms in the suspect's residence several times, most recently one month prior to the application for the search warrant, provided "reasonable probability" that firearms were present in residence when the warrant was issued. Detective Morgan's experience that "people who possess

firearms illegally do so for long periods of time," is a conclusion the Eighth Circuit has explicitly recognized for decades. *See United States v. Kennedy,* 427 F.3d 1136, 1142 n.5 (8th Cir. 2005), citing *United States v. Maxim,* 55 F.3d 394, 397 (8th Cir. 1995) ("firearms enthusiasts" tend to "keep their weapons for long periods of time," making information four months old, or even three years old adequate to "supply probable cause for a warrant to search a home of a person suspected of illegal possession of a firearm, due to the continuing nature of the possession offense. . .").

Moreover, "[i]n investigations of ongoing narcotic operations, 'intervals of weeks or months between the last described act and the application for a warrant [does] not necessarily make the information stale.'" *Smith*, 266 F.3d at 905 (quoting *Formaro*, 152 F.3d at 771) (first alteration added) (three-month old information in affidavit was not considered stale). *See also, Tyler*, 238 F.3d at 1039 (information on a drug sale "within the past 7 months" was not stale).

Here, the evidence sought pursuant to the Search Warrant was related to unlawful possession of firearms and ammunition, as well as drug trafficking. The CI observed two firearms (a rifle and a handgun) in the Cynthia Street apartment on the evening of February 4, 2016 and February 12, 2016. The Search Warrant was executed on February 25, 2016, which was three weeks after the informant's first observance of McNair in possession of firearms and thirteen days after the CI's last observation of McNair being in the apartment with a visible firearm. The CI reported that McNair answered the apartment door on February 4 while holding a rifle, and eight days later observed the same rifle lying on the kitchen table. The CI provided recent, specific, and detailed

information related to firearms that supported McNair would likely be in possession of firearms when the warrant was requested.

In addition to the information related to McNair's possession of firearms is McNair's reported involvement in drug trafficking. The CI relayed that between January and February 2016, he/she had brought individuals to the Cynthia Street apartment to purchase methamphetamine from McNair. It is not clear whether the CI was present at the apartment on February 4 and 12, 2016 for the purpose of purchasing drugs. The lack of clarity regarding the reason for the CI's presence at the apartment on those dates is unimportant since the CI observed McNair in possession of firearms during those visits. Furthermore, on February 17, 2016, the CI relayed that McNair informed the CI that he had just been to St. Louis and replenished his supply of heroin. Also relevant is McNair's prior conviction for drug trafficking from 2007 that was identified in the first paragraph of Detective Morgan's Affidavit.

Officer Morgan's Affidavit provided recent and ample information to support his belief that evidence of illegal possession of a firearm and drug trafficking would be found at the Cynthia Street apartment. The information in the Affidavit was timely under the circumstances of this case. The request for suppression based on staleness should be denied.

**II.B.** *Franks* **challenge**

McNair alleges that Detective Morgan's statements that McNair lived at the Cynthia Street apartment were false and that they were made with reckless disregard for the truth. (Doc. 28 at 8.) McNair complains about Detective Morgan's report that he

confirmed the phone number the CI used to contact McNair's girlfriend matched the phone number provided by the girlfriend to law enforcement during prior interactions. McNair also disliked the fact that Detective Morgan verified that the lease and utilities for the apartment were in the girlfriend's name, and that she reported to law enforcement that she lived in the Cynthia Street apartment. McNair alleges that "the affidavit states that the number the CI has for. . .reaching Mr. McNair is [the girlfriend's] cellphone." (Doc. 28 at 8.) This allegation is a misstatement as Detective Morgan's Affidavit simply relayed the cell phone number "used by" the girlfriend. *See* Doc. 28-1, Affidavit at ¶ 2. McNair claims these "averments" are sufficient to entitle him to a *Franks* hearing to determine the validity of the search warrant. (Doc. 28 at 8-9.)

When a defendant makes a "substantial preliminary showing" that an affiant in the search warrant made a false statement "knowingly and intentionally or with reckless disregard for the truth . . . the Fourth Amendment requires that a hearing be held at defendant's request." *Franks v. Delaware*, 438 U.S. 154, 155-156 (1978). The Court cautioned:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer or proof. They should point out specifically the portion of the warrant affidavit that is specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any non-governmental informant. Finally, if these requirements

> are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.

*Id*. at 171-72.

To satisfy the *Franks* test, a defendant's suppression motion must first show that the affiant himself either intentionally lied or that he recklessly misrepresented the truth in the affidavit. *United States v. Crook*, 936 F.2d 1012, 1014 (8th Cir.), *cert. denied*, 112 S.Ct. 974 (1991). These allegations must be accompanied by an offer or proof. *United States v. Keeper*, 977 F.2d 1238, 1242 (8th Cir. 1992). Allegations of negligence or innocent mistake are not sufficient. *Crook*, 936 F.2d at 1014. Even if a defendant identifies portions of the affidavit that he contends and swears are false, he must offer proof of the affiant's deliberate falsehood or recklessness in including the false material in the affidavit. *United States v. Streeter*, 907 F.2d 781, 788 (8th Cir. 1990). Moreover, if after the contested allegations are set aside, the affidavit still contains sufficient support for probable cause, no hearing is required. *Crook*, 936 F.2d at 1014.

In *United States v. Stevens*, 530 F.3d 714 (8th Cir. 2008), the Court stated as follows in quoting the standard to be used in determining whether a statement is knowingly false or reckless: An affiant knowingly and intentionally or recklessly includes a false statement if he "in fact entertain[s] serious doubts as to the truth of the affidavit or ha[s] obvious reasons to doubt the accuracy of the information contained therein." *United States v. Clapp*, 46 F.3d 795, 801 (8th Cir. 1995) (adopting the First Amendment libel standard for *Franks* inquiries). Inaccurate statements that result from

negligence or innocent mistake are insufficient to trigger relief under *Franks*. *See Franks*, 438 U.S. at 171; *Stevens*, 530 F.3d at 718.

> **II.B.i.** **The Defendant failed to making a showing that the Affidavit contained false statements.**

McNair presented no evidence to show the following statements were false: 1) the CI's statements about the girlfriend's cell phone number, 2) Detective Morgan's statement that the apartment lease and utilities were in the girlfriend's name, and 3) Detective Morgan's statement that the girlfriend reported the cell phone number the CI said the girlfriend used and apartment where the CI said the girlfriend and McNair lived, were the girlfriend's phone number and residence. There is no evidence to support that any of those statements are false. Detective Morgan testified that he believed McNair lived at the apartment and that he participated in surveillance at that apartment in relation to an earlier drug investigation of McNair.

In support of his theory that the apartment was not his residence, McNair points to a document from the soccer bag containing the handgun that was seized (Def.'s Ex. D at Bate stamp 64) and an email containing address information provided by McNair's probation officer(Def.'s Ex. E). There was evidence that McNair resided at a St. Louis address, his mother's residence, at various times. Significantly, however, his nickname was also plastered on the front door of the apartment on the day the Search Warrant was executed. Additionally, the CI reportedly met with McNair at the apartment on multiple occasions during the two months preceding the search warrant execution and McNair answered the door holding a firearm during one of those visits.

The undersigned concludes that the statements in the Affidavit that McNair challenges were not intentionally false or recklessly made. As a result, McNair is not entitled to a *Franks* hearing.

**II.B.ii. Information contained in the Affidavit established reliability of CS.**

McNair also complained that the Affidavit "mentions nothing concerning whether the CI has any criminal record." (Doc. 28 at 9.) McNair claims that:

> Since [it is un]know[n] whether or not the CI has a criminal record, a *Franks* hearing on this additional issue would demonstrate **whether the CI was reliable and credible** by, for example, showing whether the CI had a record of making false statements.

*Id*. (citation omitted) (emphasis added).

In consideration of McNair's complaint, this ground is ultimately an attack on the reliability of the CI which was fully addressed in paragraph 8 of the Affidavit:

> The CI has provided, to date, accurate and reliable information on other narcotics distributors and users, locations and vehicles utilized by these individuals and also firsthand information about receiving narcotics from mid to upper level dealers located in the Eastern District of Missouri. In return for information provided by the CI to law enforcement, the CI has received subsistence in the form of cash and pre-paid phone cards.

(Doc. 28-1, Affidavit at ¶ 8.)

"The reliability of a confidential informant can be established if the person has a history of providing law enforcement officials with truthful information." *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993). Absent indicia of an informant's reliability, courts insist that search warrant affidavits contain substantial police corroboration, which "may be established by a police-monitored controlled buy…." *United States v. Hawkins*,

278 Fed.Appx. 629, 635 (8th Cir. 2008). *See also United States v. Neal*, 528 F.3d 1069, 1073-74 (8th Cir. 2008) (proven reliability of informant was supported by a single controlled buy from defendant and description of firearms informant observed in defendant's residence). The undersigned notes that a controlled buy is just one example of how the police might adequately corroborate an informant's reliability.

Furthermore, it is well established that:

> [a]dmissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search. That the informant may be paid or promised a 'break' does not eliminate the residual risk and opprobrium of having admitted criminal conduct.

*United States v. Harris*, 403 U.S. 573, 583-84 (1971); *see also United States v. Pennington*, 287 F.3d 739, 742 (8th Cir. 2002) (fact that an informant implicated himself in criminal activity to the police supports a finding of probable cause to search). In essence, an informant's admissions regarding involvement in recent and continued illicit activity has the effect of enhancing the informant's credibility and reliability rather than deflating it. In this regard, the Sixth Circuit noted:

> Considering that "it is often people involved in criminal activities themselves that have the most knowledge about other criminal activities," it is no surprise that most confidential informants are engaged in some sort of criminal activity. It would unduly hamper law enforcement if information from such persons were considered to be incredible simply because of their criminal status. Without more than a mere allegation that the affiant failed to disclose the nature and degree of the confidential informant's criminal activity, [the defendant] was not entitled to a *Franks* hearing.

*United States v. Fowler*, 535 F.3d 408, 416 (6th Cir. 2008) (internal citation omitted).

The CI's familiarity with McNair and others as it relates to drug trafficking increases the reliability of the information provided. In order to be in a position to have that sort of information, the issuing judge would expect the CI was "not a model citizen" and that the CI previously violated laws. *United States v. Hall*, 171 F.3d 1133, 1143 (8th Cir. 1999) (internal quotation marks omitted).

The title of McNair's Motions states that it is, in part, a motion "to disclose and produce confidential informant." The legal basis cited for such disclosure is a request for a *Franks* hearing based on omission of information related to the CI's criminal history. The Constitution "does not require that prosecutors disclose the identity of CI's in every case." *United States v. Hollis*, 245 F.3d 671, 674 (8th Cir. 2001), citing *McCray v. Illinois*, 386 U.S. 300 (1967).

In *McCray*, the Supreme Court discussed why disclosure is not required:

> What *Roviaro* thus makes clear is that this Court was unwilling to impose any absolute rule requiring disclosure of an informer's identity even in formulating evidentiary rules for federal criminal trials. Much less has the Court ever approached the formulation of a federal evidentiary rule of compulsory disclosure where the issue is the preliminary one of probable cause, and guilt or innocence is not at stake. Indeed, we have repeatedly made clear that federal officers need not disclose an informer's identity in applying for an arrest or search warrant. As was said in *United States v. Ventresca*, we have 'recognized that 'an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant,' so long as the magistrate is 'informed of some of the underlying circumstances' supporting the affiant's conclusions and his belief that any informant involved 'whose identity need not be disclosed * * * was 'credible' or his information 'reliable."
>
> \*   \*   \*
>
> In sum, the Court in the exercise of its power to formulate evidentiary rules for federal criminal cases has consistently declined to hold that an informer's identity need

> always be disclosed in a federal criminal trial, let alone in a preliminary hearing to determine probable cause for an arrest or search.

*McCray*, 386 U.S. at 311–12 (internal citations omitted).

Detective Morgan testified that the CI had a prior conviction for drugs, which would not surprise any judge reviewing a search warrant affidavit wherein an informant claims to have information related to individuals involved in drug trafficking. Detective Morgan corroborated some of the information provided by the CI and offered a list of prior cooperation by the CI that caused him to believe the CI was reliable. The undersigned rejects McNair's argument that Detective Morgan's failure to include information about the CI's criminal history meets the showing required for a *Franks* hearing. McNair's request for a *Franks* hearing should be denied.

### II.B.iii.  Good Faith

While evidence obtained as a result of a potentially defective search warrant is generally inadmissible, there is an exception for evidence found by officers relying in objective good faith on a defective search warrant. *See United States v. Leon*, 468 U.S. 897, 920, 921 (1984). There are four circumstances under which the *Leon* good faith exception does not apply. They are as follows:

> . . .(1) the magistrate judge issuing the warrant was misled by statements made by the affiant that were false or made "in reckless disregard for the truth"; (2) " the issuing magistrate judge wholly abandoned his [or her] judicial role"; (3) the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or (4) the warrant is "so facially deficient. . .that the executing officers cannot reasonably presume it to be valid."

*United States v. Guzman*, 507 F.3d 681, 685 (8th Cir. 2007). *See also Leon*, 468 U.S. 897 at 832.

Based on the above, the undersigned concludes that even if the Search Warrant had been invalid, the good faith exception would apply in this case. First, although McNair alleges that the state court judge was misled by Detective Morgan's conclusion that McNair lived at the apartment in question, that does not change the activities the CI observed inside the apartment. Furthermore, McNair does not allege factors two through four are present in this case. Considering the information contained in the entire Affidavit, it was reasonable for both Detective Morgan and the judge to believe that the evidence sought would be found at the Cynthia Street apartment. Finally, Detective Morgan acted reasonably in obtaining the warrant, and taking the necessary steps to present the warrant application to a judge. Therefore, the undersigned concludes that the Warrant and Affidavit were also sufficient under *Leon* standards.

## II.C.  The search of the Defendant was lawful.

McNair contends that the "state search warrant did not automatically confer probable cause to search" him. (Doc. 28 at 10.)

A police officer may search a person incident to a valid custodial arrest of that person. *United States v. Robinson*, 414 U.S. 218, 235 (1973). "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to arrest requires no additional justification." *Id.* "It is the fact of the lawful arrest which establishes the authority to search." *Id. See*

*also, New York v. Belton*, 453 U.S. 454, 461 (1981) (same); *United States v. Lewis*, 183 F.3d 791, 794 (8th Cir. 1999) (same).

Before McNair was searched, a pat down of McNair's girlfriend resulted in the discovery of drugs in her pants. Detective Morgan searched McNair's person because he believed he had probable cause to arrest McNair for possession of controlled substances and drug paraphernalia based on his observations inside the residence. Detective Morgan also had probable cause to search McNair based on the information he had received from the CI (*i.e.*, McNair's prior drug dealings and possession of firearms).

The undersigned finds that the search of McNair's person was lawful and his suppression motion on this ground should be denied.

### III. Conclusion

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that the Defendant's Motions to Disclose and Produce the Confidential Informant, to Conduct a *Franks* Hearing and to Suppress Evidence Seized pursuant to the Search Warrant (Doc. 28) be **denied**.

Further, the parties are advised that they have until June 16, 2016, within which to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained. Failure to file timely objections may result in a waiver of the right to appeal questions of fact. *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

                                                  ABBIE CRITES-LEONI
                                                  UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of June, 2017.